**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherri Haahr, | No. CV-21-01461-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Ovations Food Service LP, | |
| Defendant. | |

Before the Court is Defendant Ovations Food Service LP's Motion for Summary Judgment (the "Motion") (Doc. 39). The Motion is fully briefed and ready for review. (Docs. 39, 50, & 59). For the following reasons, the Court grants the Motion.[1]

**I.     BACKGROUND**[2]

On September 6, 2016, Plaintiff Sherri Haahr ("Plaintiff") began working for Defendant Ovations Food Service LP ("Defendant") as a Human Resources Generalist. (Doc. 40 at 2). Defendant "offers full-service management of food services and hospitality programs, including day-to-day management of staffing, training, purchasing, food and

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending Motion to be suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

[2] Unless otherwise noted, this Background section is based on Plaintiff's allegations in the Complaint (Doc. 1) and on the facts set forth in Defendant's Statement of Facts in Support of the Motion (Doc. 40), but only those expressly admitted to by Plaintiff's own Statement of Facts (Doc. 49).

alcohol service, and customer service." (Doc. 39 at 2). At the time of Plaintiff's hire, Defendant "had an agreement to manage food and beverage services at three Arizona casinos operated by Gila River Gaming Enterprises." (Doc. 40 at 1). Plaintiff worked at Gila River Gaming Enterprises' corporate office in Chandler, Arizona. (*Id.* at 2).

On or around Friday, October 28, 2016, Plaintiff informed her supervisor, Michael Doocey, that she was resigning. (Doc. 40 at 2). Plaintiff explained that an employee had been threatening other employees with a knife in the workplace and that the situation had caused her "considerable fear, anxiety, and distress." (Doc. 49 at 3). Mr. Doocey persuaded Plaintiff to remain at the company and agreed to give her time to consider it. (Doc. 40 at 2). Mr. Doocey asked Plaintiff "to call in each day if she was not coming to work." (*Id.*). For approximately three weeks, Plaintiff called in each morning to report her absence. (*Id.* at 2–3). On Thursday, November 17, 2016, Plaintiff returned to work. (*Id.*). Plaintiff alleges that she decided to return only after Defendant transferred the threatening employee to a different office. (Doc. 49 at 4).

During Plaintiff's absence, Defendant hired Lisa Ethelbah "to serve as the Human Resources Director, which included supervising [Plaintiff] and the rest of the Human Resources department." (Doc. 40 at 3). On December 19, 2016, at 3:17 p.m., Plaintiff sent an email—with the subject line "Personal leave of absence"—to Ms. Ethelbah stating:

> Per your text message I received today, December 19, 2016 at 3:08 pm, since my physician has me out until 1/2/17, I am required by policy to request an extended personal leave of absence.
>
> Please accept this email as a request for an extended personal leave of absence.

(Doc. 40-1 at 62). In addition to the email, Plaintiff provided a note from her physician, Dr. Lawrence W. Bence, MD—dated December 16, 2016—which stated:

> Sherri Haahr is currently under my medical care and may not return to work at this time. Please excuse Sherri for 14 day(s). She may return to work on 01/02/2017. Activity is restricted as follows: none. If you require additional information[,] please

2

> contact our office.

(*Id.* at 64). On December 20, 2016, at 4:30 p.m., Ms. Ethelbah responded to Plaintiff's email by denying her request for a personal leave of absence:

> I have received your request for an extended leave of absence to be out until 1/2/17. In reviewing your request and our policies and procedures, you do not qualify for a Personal Leave of Absence because you have not completed three full years of service and you have not worked full time for a minimum of six continuous months prior to the request. In addition, you do not have enough sick leave or vacation hours accrued to cover the 11 days you have requested as a personal leave of absence. Therefore, *your request for a personal leave of absence is denied because you do not qualify for such.* . . .
>
> Since you are ineligible for any leave of absence options and you do not have enough leave to cover the amount of time you are requesting, *you are expected to return to work on Wednesday, December 21, 2016 at 8 a.m. Failure to do so will be considered resignation of your employment*.

(*Id.* at 60 (emphasis added)). Just under an hour later, at 5:27 p.m., Plaintiff responded in an email with the subject heading "REQUEST FOR DISABILITY LEAVE OF ABSENCE":

> If you are denying my extended personal leave of absence, then please refer to page 62 (Disability (Including Pregnancy) Leave of Absence).
>
> According to this leave it doesn't indicate an employee must be employed for a certain duration to be qualified. It's [sic] goes on to say a disability leave may be granted for up to ninety (90) days. If necessary, you may request extensions in thirty (30) day increments for a maximum of one (1) year. Whenever possible, you are required to give as much notice as possible of your pending need for a disability leave of absence.
>
> Since you never informed me of the Disability Leave of Absence, but I did find my handbook, so *this is my official request for a Disability Leave of Absence*, as I do qualify for this leave, per handbook, page 62, again, there is not a specified waiting period for an employee to qualify as the Extended Leave of Absence required. I have already provided you a copy of my doctor note.

(*Id.* at 59 (emphasis added)). On December 21, 2016, at 5:51 p.m., Ms. Ethelbah responded by denying Plaintiff's request for disability leave of absence and informing Plaintiff that she had been terminated:

> The handbook states the company may grant an unpaid leave of absence for illness, disability[,] or pregnancy. To request a disability leave of absence from your manager, you should submit a statement of ill health or disability from your doctor. To date, the only documentation I have received is a note stating that you are under medical care and to excuse you for 14 days, noting that you may return on 1/2/17. This document does not provide any information regarding a disability, therefore, *your request for a disability leave of absence is denied*.
>
> As you are aware, your request for a personal leave of absence on 12/20/16 was denied and you were informed of such below. In addition to notification of the denial, you were informed that you needed to return to work today, 12/21/16, at 8 a.m. or we would take that as your resignation from your position. It is now the close of business on 12/21/16, and you failed to return to work. For this reason, *we accept your failure to return today as your resignation* from the position of the Human Resources Generalist effective 12/21/16.

(*Id.* at 58 (emphasis added)). The following morning, on December 22, 2016, Ms. Ethelbah resent this email to Plaintiff's personal email address after realizing that she had accidentally sent the email to Plaintiff's work email address the previous evening. (*Id.* at 57). Approximately twenty minutes later, Plaintiff responded:

> *Exactly what do you need from my physician?* He clearly states I'm under his care, which means under ADA guidelines, an individual with a disability is defined by ADA as a person who has a physical or mental impairment that substantially limits one or more major life activities. A person who has a history or record of such an impairment or a person who is perceived by others as having such an impairment.
>
> What is your determination for my denial of disability leave based on?
>
> My physician clearly states I'm unable to return to work as I'm under his care. I have a follow up appointment with him on Friday, December 30th. What more is required from my physician without violating HIPAA?

4

> An impairment that is episodic or in remission is a disability.
>
> Your email stated there was no other Leave of absence I qualified for which was untrue, as I had to research the handbook for this information to find there was a leave for disability.
>
> Please refer to the EEOC final regulations implementing ADA.
>
> I look forward to hearing back from you regarding my above inquiries.

(*Id.* at 56 (emphasis added)). At 2:00 p.m., Plaintiff sent another email to Ms. Ethelbah, stating "[u]ntil I receive a written response in regards to my last email . . . I will continue to follow the call in procedures. As I am requesting how you based your determination, as my physician provided written documentation I am currently under his care." (*Id.* at 55). Plaintiff sent a final email to Ms. Ethelbah later that evening, at 6:52 p.m.:

> In reviewing page 62 under Disability (Including Pregnancy) Leave of Absence, it states the following:
>
> ["]To request a disability leave of absence from your manager, you should submit, or have someone submit for you, a statement of ill health or disability from your doctor.["]
>
> I sent you an email requesting disability leave, therefore I have fulfilled my obligation per this directive. To include providing you with a doctors note stating I am currently under his care. So in essence, I covered "both" requests, not just one.
>
> I am requesting a response in regards to the findings above, which negate your email stating I didn't provide either document.

(*Id.*). Ms. Ethelbah did not respond to Plaintiff's final three emails, at least based on the record provided to the Court. Around this same time, Plaintiff requested and later began receiving short-term disability benefits from Defendant's benefits provider, Sedgwick Claims Management Service, Inc. (Doc. 40 at 5). She received these benefits from December 2016 until June 2017. (*Id.*). Her request for long-term disability benefits was denied. (*Id.*). In August 2017, Plaintiff began feeling better and looking for work again. (*Id.*). On October 2, 2017, she began working at CoreCivic. (*Id.* at 5–6). On June 29, 2018,

Plaintiff resigned from her job at CoreCivic, citing her "current medical condition" and the fact that she did not want to work there anymore. (*Id.* at 5).

On January 12, 2016, Plaintiff filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"). (Doc. 1 at 3). The EEOC eventually found "reasonable cause to believe [Defendant] violated the ADA when it denied [Plaintiff]'s request for a reasonable accommodation for her disability and when it discharged her from employment." (*Id.* at 4). On May 25, 2021, the EEOC issued a Right to Sue letter. (*Id.* at 5). On August 23, 2021—within 90 days of receiving the Right to Sue letter—Plaintiff filed the Complaint in this matter, alleging disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, as amended by the ADA Amendments Act of 2008. (Doc. 1 at 1). Plaintiff alleges that her work performance at all relevant times was "satisfactory to excellent" and that she was qualified and able to do her job as a Human Resources Generalist. (*Id.* at 2). Plaintiff alleges that she "suffers from a disability consisting of a medical condition that substantially limits her ability to engage in one or more essential life activities; for example, she is sometimes not able to recreate, perform manual tasks, concentrate or do common household chores." (*Id.*). Plaintiff alleges that her emails requested a reasonable accommodation for her disability consisting of a two-week leave of absence between December 20, 2016 and January 2, 2017. (*Id.*). Plaintiff alleges that Defendant ignored this request, refused to engage in the interactive process, and terminated her on the basis of her disability and request for accommodation. (*Id.* at 3).

On September 7, 2022, Defendant filed the present Motion for Summary Judgment, arguing that Plaintiff cannot present facts sufficient to satisfy her burden of proof under the ADA and that Defendant is therefore entitled to summary judgment. (Doc. 39 at 14). On October 24, 2022, Plaintiff filed a Response opposing the Motion. (Doc. 50). On November 30, 2022, Defendant filed a Reply. (Doc. 59).

///

///

## II.     LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id*. at 322–23. When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorable to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

## III.     DISCUSSION

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A qualified individual with a disability is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must establish that "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of [her] disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (citation omitted). "Discharging an individual because of a disability or failing to accommodate an individual's known disability constitute adverse employment actions." *Marquez v. Glendale Union High Sch. Dist.*, No. CV-16-03351-PHX-JAT, 2018 WL 4899603, at *17 (D. Ariz. Oct. 9, 2018) (citing 42 U.S.C. §§ 12112(b)(1), 12112(b)(5)(A)).

Here, Plaintiff contends that she has "a long history of medical issues" and that her disabilities include depression, anxiety, migraines, and fibromyalgia (Doc. 50 at 10; *see also* Doc. 40-1 at 20–21 (Plaintiff stating at deposition that "depression, anxiety, [and] migraines" were the disabilities that prompted her request for leave)). Plaintiff alleges that Defendant discriminated against her—on the basis of her disabilities and in violation of the ADA—when it failed to engage in the interactive process, denied her request for a reasonable accommodation, and terminated her employment. (Doc. 1 at 3). In its Motion, Defendant argues that Plaintiff failed to adequately advise Defendant of her disability, which left the company without any duty to engage in the interactive process or otherwise provide an accommodation. (Doc. 39 at 6–9). Moreover, Defendant argues that Plaintiff cannot establish a *prima face* case because her failure to disclose her disability to Defendant leaves her without any evidence demonstrating that she was denied an accommodation and terminated *because of* her disability.[3] (*Id.*).

The Court agrees with Defendant. An employer can only be liable under the ADA if it had knowledge of the plaintiff's disability. This makes sense, for if the employer was "truly unaware that such a disability existed, it would be impossible for [any adverse employment action] to have been based, even in part, on [the plaintiff's] disability." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 54 n.7 (2003); *see also Alejandro v. ST Micro Elecs., Inc.*, 129 F. Supp. 3d 898, 909 (N.D. Cal. 2015) (citation omitted) ("A plaintiff must show that the employer knew of the employee's disability in order to show that the employee was terminated because of the disability."); *Trammell v. Raytheon Missile Sys.*, 721 F. Supp. 2d 876, 878 (D. Ariz. 2010) ("If [Defendant] lacked actual knowledge of Plaintiff's disability, as a matter of law [Defendant] could not have fired him because of

---

[3] Defendant's Motion also argues that, even if Plaintiff had sufficiently notified Defendant of a qualifying disability, her claim would still fail because she cannot demonstrate that any reasonable accommodation existed. (Doc. 39 at 9–11). The Court need not address this alternative argument because Defendant is entitled to summary judgment on its first argument alone.

it.").[4] "An employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Marquez*, 2018 WL 4899603, at *18 (quotations omitted) (quoting *Schmidt v. Safeway, Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994)).

Here, there is *no* evidence that Defendant was or reasonably should have been aware of Plaintiff's medical conditions, disabilities, or related limitations from a third party or by its own observation prior to December 19, 2016. The parties agree that Plaintiff did not disclose her medical conditions to *anyone* at the company. (Docs. 40 at 6 & 49 at 8). There is no evidence of any complaints or reports being made to Defendant that Plaintiff was having difficulties with any job-related tasks because of a medical condition or limitation. Instead, the record indicates that Plaintiff was able to perform her job satisfactorily at all times prior to December 19, 2016. In fact, Plaintiff was apparently working eleven-hour days and doing the work of three Human Resource Generalists due to the understaffing of her department. (Doc. 49 at 4). Given Plaintiff's job performance, Defendant had no reason to know that she had any disability that was limiting or could potentially limit her in the workplace. Even Plaintiff's attempted resignation and subsequent, two-and-a-half-week absence in early November 2016 failed to put Defendant on notice of Plaintiff's disabilities

---

[4] *See also Boadi v. Ctr. for Hum. Dev., Inc.*, 239 F. Supp. 3d 333, 350–51 (D. Mass. 2017) (quotations and citation omitted) (listing cases) ("Many courts have determined that a plaintiff cannot sustain a *prima facie* case of disability discrimination without showing that an employer had actual or constructive knowledge of the plaintiff's disability."); *Mpoyo v. FIS Mgmt. Servs., LLC*, No. CV-17-04307-PHX-SPL, 2019 WL 6682386, at *2 (D. Ariz. Dec. 6, 2019) (quotations and citation omitted) ("It follows that the plaintiff must show that the defendant had knowledge of his disability when making the adverse employment decision."); *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) (citations omitted) ("Where a plaintiff alleges a failure to accommodate, the plaintiff must show that the employer knew about plaintiff's disability and did not reasonably accommodate it."); *Fournier v. Payco Foods Corp.*, 611 F. Supp. 2d 120, 128 (D.P.R. 2009) (citing 42 U.S.C. § 12112(b)(5)(A)) ("A necessary prerequisite to holding an employer liable under the ADA is that the employer actually had knowledge of the plaintiff's disability.").

because it did not appear to have anything to do with Plaintiff's health. The parties agree that Plaintiff did not provide *any* documentation to support the absence, let alone any documentation disclosing a disability or limitation therefrom.[5] Plaintiff contends that her attempted resignation and absence did not result from any sickness or other medical condition at all, but rather that she feared for her own safety in light of a coworker's threatening behavior. (Doc. 50 at 13). In sum, the Court finds no evidence suggesting that Defendant had or should have had any knowledge that Plaintiff was disabled or that any reasonable accommodation was necessary prior to December 19, 2016.

It is unsurprising that Defendant failed to become aware of Plaintiff's disabilities on its own, given that her alleged disabilities—depression, anxiety, migraines, and fibromyalgia—are not the sort of medical conditions which are open, obvious, or apparent. In such a situation, the burden falls on the employee to sufficiently disclose her disability and resulting limitations and to request a reasonable accommodation. *See Cordero v. Miraval Holding LLC*, No. CIV 10–642–TUC–JGZ (LAB), 2013 WL 627225, at *7 (D. Ariz. Jan. 17, 2013) (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996)) ("Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations."). Once the employee makes a sufficient disclosure of her limitations and requests an accommodation, the employer has a duty to engage in the interactive process, which is "an informal undertaking in which the employee

---

[5] Paragraph 11 of Defendant's Statement of Facts states that Plaintiff "did not advise anyone how long she was going to be absent, and provided no documentation to support her absence." (Doc. 40 at 2). Plaintiff denies Paragraph 11, but only because "it falsely implies that Mr. Doocey required [Plaintiff] to document her absence from work, when in fact after [Plaintiff] submitted her voluntary, written resignation Mr. Doocey asked only that she call in each day if she was not coming back to work, which she did." (Doc. 49 at 4). Plaintiff does *not* dispute the fact that no documentation was provided.

and the employer attempt to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome these limitations.'" *Hill v. City of Phx.*, 162 F. Supp. 3d 918, 927 (D. Ariz. 2016) (quoting 29 C.F.R. § 1630.2(o)(3)). "An employer *must* participate in the interactive process upon receiving notice of the employee's disability and desire for accommodation, or, 'in circumstances in which an employee is unable to make such a request, if the company knows of the existence of the employee's disability.'" *Id.* at 928 (emphasis added) (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000), *vacated on other grounds by U.S. Airways, Inc. v. Barnett*, 535 U.S. 391 (2002)). Here, the question of whether Defendant had the requisite knowledge of Plaintiff's disabilities or of her need for an accommodation turns on whether Plaintiff's email communications with Ms. Ethelbah between December 19 and 22, 2016, sufficiently disclosed such information. In analyzing whether Plaintiff's emails constituted a sufficient disclosure, the Court cannot be overly demanding, for "[a]n employee is not required to use any particular language when requesting an accommodation but need only 'inform the employer of the need for an adjustment due to a medical condition.'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting *Barnett*, 228 F.3d at 1114 n.5).

Even under this liberal standard, however, Plaintiff in this case failed to put Defendant on notice of her disability in a manner sufficient to trigger the interactive process. Plaintiff's initial email—on December 19, 2016—requested a two-week "personal leave of absence" and attached a doctor's note stating that Plaintiff was "currently under [the doctor's] medical care and may not return to work at this time." (Doc. 40-1 at 61–62, 64). The doctor's note stated "[p]lease excuse [Plaintiff] for 14 day(s)" and that Plaintiff "may return to work on 01/02/2017." (*Id.*). Finally, the doctor's note stated that Plaintiff had *no* activity restrictions, and that Defendant could contact the doctor's office if it required any additional information. (*Id.*). Plaintiff's initial email and attached doctor's note did not even mention the word "disability," let alone specifically identify any medical condition, disability, or related limitation that would necessitate her leave request. The initial communications did not even disclose the symptoms Plaintiff was suffering from or

11

otherwise explain *why* Plaintiff was under the doctor's care or *why* she could not work for two weeks. Plaintiff's initial communications would indicate, *at most*, that Plaintiff was sick or suffering from some temporary illness for which she needed two weeks to recover, *not* that she was disabled. *See Jadwin v. Cnty. of Kern*, 610 F. Supp. 2d 1129, 1179 (E.D. Cal. 2009) ("Knowledge of just the symptoms or effects of an otherwise undisclosed condition is not, however, sufficient if those symptoms or effects do not raise an inference that the person is disabled."); *Boadi*, 239 F. Supp. 3d at 351 ("Knowing that an employee has health problems . . . is not the same as knowing that the employee suffers from a disability.").

On December 20, 2016, Ms. Ethelbah responded to Plaintiff's request for a two-week personal leave of absence by informing Plaintiff that she did not qualify for such leave given her short tenure with the company. (Doc. 40-1 at 60). Further, Ms. Ethelbah informed Plaintiff that she did not have enough sick leave or vacation hours to cover the time off that Plaintiff was requesting. (*Id.*). Therefore, Plaintiff's request was denied. (*Id.*). Ms. Ethelbah also informed Plaintiff that if she failed to return to work the following day—December 21, 2016—the company would consider her failure to appear as her resignation of employment. (*Id.*). That evening, after business hours, Plaintiff responded by repeating her request for leave. (*Id.* at 59). Plaintiff's renewed request was different from her first request in name only, as she simply requested *disability* leave of absence rather than *personal* leave of absence but otherwise failed to include any additional details as to the basis for her request. (*Id.*).

To be sure, this second request comes closer to satisfying Plaintiff's duty to put Defendant on notice of her disability by reframing her leave request as being based on a disability. It follows that her request for two weeks of leave could now be considered a request for a specific accommodation. *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) ("Unpaid medical leave may be a reasonable accommodation under the ADA. . . . Even an extended medical leave, or an extension of an existing leave period, may be a reasonable accommodation if it does not pose an undue hardship on the

employer."); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135 (9th Cir. 2001) (citing 29 C.F.R. 1630 app. § 1630.2(o)) ("A leave of absence for medical treatment may be a reasonable accommodation under the ADA."). Aside from adding the word "disability" to her request, however, Plaintiff's second email did nothing to meaningfully change the issues that plagued her first request. Plaintiff still failed to identify the disabilities she was suffering from or otherwise provide any detail as to her medical condition. Perhaps more importantly, Plaintiff still failed to identify any limitations she was suffering as a result of any alleged disability or medical condition. Thus, Defendant was *still* without any meaningful knowledge of Plaintiff's disabilities or of any associated limitations. *See Marquez*, 2018 WL 4899603, at *19 (emphasis in original) (quoting *Taylor*, 93 F.3d at 164) (other citations omitted) ("[I]t is important to distinguish between an employer's knowledge of an employee's *disability* versus an employer's knowledge of any *limitations* experienced by the employee as a result of that disability. This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities."). As a result, Plaintiff's request for disability accommodations remained little more than a vague and conclusory statement that she was suffering from some unidentified medical condition and failed to put Defendant on notice that she had a disability. *See Alejandro*, 129 F. Supp. 3d at 909 (quotations and citation omitted) ("Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under . . . the ADA.").

On December 21, 2016, Plaintiff failed to appear for work. (Doc. 40-1 at 58). At the end of that day, Ms. Ethelbah responded to Plaintiff's second request for leave. (*Id.*). She stated that "[t]o request a disability leave of absence from your manager, you should submit a statement of ill health or disability from your doctor." (*Id.*). She further explained that "[t]o date, the only documentation I have received is a note stating that you are under medical care and to excuse you for 14 days" but that the note "does not provide any information regarding a disability." (*Id.*). Finally, Ms. Ethelbah stated that Plaintiff's employment had been terminated, as her failure to return to work that day had been deemed

as her resignation. (*Id.*). On December 22, 2016, Plaintiff sent three responsive emails to Ms. Ethelbah. (*Id.* at 55–56). The first email asked, "Exactly what do you need from my physician?" and "What is your determination for my denial of disability leave based on?" (*Id.* at 56). The email then stated the definition of "disability" under the ADA guidelines and repeated Plaintiff's assertion that the doctor's note "clearly states I'm unable to return to work as I'm under his care." (*Id.*). In the second email, Plaintiff stated that she would continue to follow the call-in procedures until she received a response answering her questions in the first email. (*Id.* at 55). Finally, in the third email, Plaintiff reasserted that she had already "fulfilled [her] obligation" under Defendant's policies by sending the email requesting disability leave and providing the doctor's note stating that she was under his care. (*Id.*). Ms. Ethelbah did not respond to Plaintiff's final three emails.

As an initial matter, the Court arguably does not need to consider Plaintiff's final three emails at all, given that Defendant had already terminated Plaintiff's employment by the time they were sent. *See Adams v. Maricopa Cnty.*, No. CV-19-05253-PHX-MTL, 2020 WL 6383248, at *9 (D. Ariz. Oct. 20, 2020) ("[G]iven that [the defendant] had no reason to know of [the plaintiff]'s disabilities or limitations when it notified her of its intent to terminate, the requests for accommodation were 'too late.'"); *Alamillo v. BNSF Ry. Co.*, No. CV 14-08753 SJO (SSx), 2015 WL 11004494, at *7 (C.D. Cal. June 16, 2015) (citation and quotations omitted) ("An employer's duty to reasonably accommodate a disability is always prospective, and an employer is not required to excuse past misconduct. . . . Once termination is imminent according to the employer's policy, a request for accommodation is too late."); *Stafne v. Unicare Homes, Inc.*, No. CIV. 97-470 JRT/FLN, 1999 WL 1212656, at *5 (D. Minn. Aug. 12, 1999) ("Once defendant no longer employed plaintiff, she obviously was not entitled to reasonable accommodations or the interactive process."). However, even if Plaintiff's final three emails *are* considered, the Court finds that they did nothing to address the shortcomings of Plaintiff's first two requests for leave. Plaintiff *still* failed to identify or specify what disabilities she was suffering from. Plaintiff *still* failed to provide any detail whatsoever as to her medical condition or *why* she was under her

doctor's care. Plaintiff *still* failed to identify any work-related limitations that she had as a result of a disability or other medical condition. Plaintiff *still* failed to explain *why* she needed the accommodation she sought, *i.e.*, two weeks of leave. Having reviewed all of Plaintiff's correspondence with Defendant between December 19 and 22, 2016, the Court cannot find that Plaintiff placed Defendant on notice of her disability or need for accommodation.[6] Even viewing the evidence in Plaintiff's favor, the record merely indicates that Plaintiff requested two weeks off for personal leave of absence for an undisclosed reason apparently related to her health (as evidenced by the doctor's note). When that request was denied, Plaintiff simply made her request a second time, with *the only difference* being that she sought to use *disability* leave instead. No disability or limitations were ever identified. Plaintiff simply made a generic request for disability leave after her first request for personal leave was denied.

In sum, there is no evidence in the record that Defendant knew that Plaintiff suffered from depression, anxiety, migraines, or fibromyalgia. Accordingly, the Court finds that Defendant did not have knowledge of Plaintiff's alleged disabilities or her limitations therefrom, that Defendant therefore could not have discriminated against Plaintiff based

---

[6] Plaintiff argues that her correspondence with Defendant—*specifically*, the doctor's offer to Defendant that "[i]f you require additional information please contact our office" and her question asking "[e]xactly what do you need from my physician?"—were *at least* sufficient to trigger the interactive process. (Doc. 50 at 9–10).

The Court is unpersuaded. Neither of these statements disclosed Plaintiff's disabilities or limitations. It is the absence of *this disclosure* which prevented the interactive process from being triggered in this case. *See Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 470 (8th Cir. 2007) ("[T]he initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations. . . . The point of requiring an employee to provide this kind of information is to allow the employer to understand that the employee suffers from a disability. Without this information the employer is unable to engage in the interactive process required to determine what accommodations might be appropriate and available."); *Marquez*, 2018 WL 4899603, at *20 (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)) ("'Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown in the interactive process,' and Defendant bears no such responsibility for the breakdown here.").

upon her disabilities under the terms of the ADA, and that Defendant is entitled to summary judgment. *See* 42 U.S.C. § 12112(b)(5)(A) (defining discrimination to include "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability"); *Trammell*, 721 F. Supp. 2d at 882–83 ("To survive summary judgment, Plaintiff needs evidence to dispute Defendant's assertion it had no knowledge that the Plaintiff suffered from depression until after his termination. There is none.").

## IV. CONCLUSION

In sum, Plaintiff failed to provide adequate notice of her disability, leaving Defendant without any knowledge of her disability at the time it terminated her employment. As a matter of law, Plaintiff has failed to plead facts which, taken as true and viewed in the light most favorable to Plaintiff, establish a *prima facie* claim for disability discrimination under the ADA. Summary judgment in Defendant's favor is appropriate.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 39) is **granted**. Plaintiff's ADA claim against Defendant is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **enter judgment** and **terminate** this action accordingly.

Dated this 26th day of April, 2023.

Honorable Steven P. Logan
United States District Judge